IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, September 29, 2010

In Re:  MAYSOON M.A.A.K., and FALASTEEN  M.A.A.K., MUHAMMAD
I.S. and TESSA D. S., v. SONYA G.

Appeal from the Juvenile Court for Knox County
No. 73062      Hon. Tim Irwin, Judge

No. E2010-01318-COA-R3-PT - FILED NOVEMBER 3, 2010

Petitioners, custodians of two minor children, filed this action to terminate the mother's parental rights.  Following an evidentiary hearing, the Trial Judge found there was clear and convincing evidence to support termination, based upon willful failure to support/visit and persistent conditions.  The Court also found that the evidence was clear and convincing that termination was in the children's best interest.  On appeal, we affirm the Judgment of the Trial Court.

Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and.  D. MICHAEL SWINEY, J., joined.

Ben H. Houston, II., Knoxville, Tennessee,  for the appellant, Sonya G.

Theodore Kern, Knoxville, Tennessee, for the appellees, Muhammad I.S. and Tessa D.S.

OPINION

Petitioners, Muhammad S. and Tessa S., filed a Petition for Termination of Parental Rights, seeking to terminate the parental rights of the biological mother, Sonya G., and the biological father, Muzher A., to twin girls born June 24, 2008.

Petitioners state that the girls have been residing with petitioners since they were about four weeks old, and that they have legal custody.

The Petition avers that Muzher A. was identified by the biological mother as the father of the twins, but that he was not legally married to the mother when the twins were conceived or born. The Petition further avers that the father is currently living in Jordan, having been deported during the mother 's pregnancy, and that he cannot legally return to the United States at this time. The Petition avers that he has never seen the twins, and has only sent two support payments over the last year, totaling $240.00.

The Petition states that Sonya G., the mother, had the children removed from her care at birth due to her history of mental problems, including depression and bipolar disorder, and due to reports by the hospital staff that she appeared incapable of taking care of the children. According to the Petition, the twins were found to be dependent and neglected on October 31, 2008, and the mother was given supervised visitation. Further, that the mother visited 15 times between June 30, 2008, and December 13, 2008, but she had not visited since that time, and that the mother has never paid any child support.

The Petition states that termination should be based on Tenn. Code Ann. §36-1-102(1)(A), Tenn. Code Ann. §36-1-113(g)(2), and Tenn. Code Ann. §36-1-113(g)(3). Further, that termination is in the children's best interests.

A hearing was held on May 21, 2010. The mother and other witnesses, including the petitioners testified. At the conclusion of the evidentiary hearing, the Trial Court entered a Final Order Terminating Parental Rights of Sonya G., and made the following findings of fact:

> Petitioners were members of mother's religious community and applied for custody of the twins to help her. Petitioners have had custody of the twins since they were three weeks old and the twins have integrated into petitioners' family and are thriving. The mother's visits with the twins were supervised, at the mosque, with Tessa S. providing supervision from July through October 2008, but the visits were sporadic and the mother had difficulty due to reliance on public transportation. Tessa S. tried to accommodate her, and in October 2008, the mother switched the visits to the mall, and Muhammad S. began providing supervision. There were consistent weekly visits in October and November 2008, but in December 2008, the visits were moved to Parent Place.

> The Court found that petitioners offered to pay for Parent Place and offered to provide the mother with transportation there by taxi, but the mother refused and never set up

visitation. The Court found that the last visit was in December 2008, and the last telephone contact was in January 2009. The Court held that petitioners could have been contacted by the mother at any time if she had chosen to do so, and that the mother was not under any disability that would have kept her from contacting petitioners. The Court found the mother had never paid any child support for the twins, nor provided food, clothing, or any other items for them, and that she was not under any disability that would have kept her from providing some type of support.

The Court found that clear and convincing evidence existed to support termination based upon willful failure to support/visit, and for persistent conditions. The Court also found that the evidence was clear and convincing that termination was in the children's best interests.

The mother has appealed and these issues are raised:

1. Did the Trial Court err by terminating the mother's parental rights based on a ground that was not sought by the petitioners nor addressed at trial?

2. Did the Trial Court err by relying on inadmissible hearsay evidence despite the objections of the mother's counsel?

3. Did the Trial Court err by terminating the mother's parental rights even though the petitioners failed to produce sufficient evidence that the mother willfully failed to support her children?

4. Did the Trial Court err by terminating the mother's parental rights even though the petitioners failed to produce sufficient evidence that the mother willfully failed to visit her children?

5. Did the Trial Court err in terminating the mother's parental rights even though the petitioners failed to produce sufficient evidence to establish Tenn. Code Ann. §36-1-113(g)(3) as a ground?

As we have previously stated:

A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions. While this right is fundamental and superior to the claims of other persons and the government, it is not absolute. It continues without interruption only as long as a parent has not relinquished it,

abandoned it, or engaged in conduct requiring its limitation or termination.

Termination proceedings in Tennessee are governed by statute. Parties who have standing to seek the termination of a biological parent's parental rights must prove two things. First, they must prove the existence of at least one of the statutory grounds for termination. Second, they must prove that terminating the parent's parental rights is in the child's best interests.

*In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005)(citations omitted).

The Supreme Court in *In re F. R.R., III*, 193 S.W.3d 528 (Tenn. 2006), explained the standard of review for cases involving termination of parental rights:

This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn.Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*Id*. at 530.

The Trial Court found the mother had abandoned the children as a ground for termination, both by willful failure to support and by willful failure to visit. "Abandonment" is defined in Tenn. Code Ann. § 36-1-102(1)(A)(i) as follows:

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

As the Supreme Court has observed, "Certainly, a parent who has abandoned his child, either by willfully failing to visit or by willfully failing to support, is unfit." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999). The abandonment must be willful, however, and where a

-4-

parent has been thwarted in visitation efforts, the courts have refused to find willful abandonment. *See, e.g., In re D.A.H.*, 142 S.W.3d 267, 277 (Tenn.2004).

We have previously explained that the "[f]ailure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *In re Audrey S.*, at 864.

In this case, the mother testified that she was unable to visit the children because the petitioners insisted on moving the visits to Parent Place, which she could not afford. She admitted that they offered to pay for this visitation at Parent Place and even offered to pay for her to take a taxi over there, but stated that she did not want to accept assistance from them because she was afraid they would later sue her to get this money back. The mother claimed that she could not contact petitioners after January 2009 because she tried to call and their phone number had been changed. The mother's neighbor, Ms. Bailey, testified that the mother had tried to use her phone and told her that petitioner's number had been changed.

Petitioners, on the other hand, testified that their phone number was the same from October 2008 forward, that the mother had always had this number, and that it had not changed. The proof was undisputed that their phone number was listed in the local phone directory. Moreover, petitioners explained their reasons for wanting to change the visits to Parent Place (which was expressly provided for in the Court's order dated October 31, 2008), and testified that they offered to pay the cost of the same for the mother, as well as provide her with transportation to get there. Petitioners testified that they encouraged the mother to see the babies, tried to accommodate her schedule, transportation issues, etc., and did nothing to thwart her visits with her children. Petitioners testified the mother's visitation was always intermittent, and that when asked to go to Parent Place, she simply refused.

Abandonment inquires are heavily fact-driven and the courts "may consider any fact that assists them in deciding whether the parent's conduct demonstrates a conscious or willful disregard of all of his parental duties." *In re Satterwhite*, 2001 WL 387389 (Tenn. Ct. App. Apr. 17, 2001). The trial court is in the best position to assess the credibility of the witnesses, and the "weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact. Therefore, such determinations are entitled to great weight on appeal." *Id.*

The Trial Court credited the petitioners' testimony on these issues. Petitioners

claimed that they had made every effort to facilitate and encourage the mother's visitation with the twins, that they had accommodated her schedule, transportation issues, etc., and were willing to continue doing so had she pursued visitation. They did ask that the visits be changed to Parent Place, as provided by the Court 's prior Order, due to the mother's tendency to become upset and emotional and act out in public during the visits.

The mother admitted that she was offered assistance by petitioners but refused it. She admitted that she did not contact DCS or the Court to try and set up visitation with her children. The proof is undisputed that petitioners were always listed in the phone directory, and thus the mother could have reached them had she tried. Further undisputed proof revealed that she did nothing and contacted no one to try to re-establish visitation with her children for more than four months preceding the filing of the petition. The Trial Court did not err in finding the mother could have visited the children if she had tried, and that she had willfully failed to do so. This ground for termination was shown by clear and convincing evidence.

The proof was also undisputed that the mother never provided any financial support for these twins.

The proof supports the Trial Court's finding that the mother willfully failed to support the twins, as well as the ground of abandonment by willful failure to visit, which was clearly established. Accordingly, the existence of any one ground for termination is enough. *In re Valentine*, 79 S.W.3d 539 (Tenn. 2002).

The mother argues that the Trial Court erred by basing its decision to terminate on the ground of persistence of conditions, when same was not proven by clear and convincing evidence and was not relied on by petitioners at trial. The ground was alleged in the Petition, however, and evidence regarding the ground was adduced at trial. Tenn. Code Ann. §36-1-113(g)(3) sets forth the grounds regarding termination.

The Trial Court found that this ground was proven by clear and convincing evidence, because the children had been in the custody of petitioners for nearly two years, and the mother had failed to comply or had complied only in a token fashion with the requirements listed in the October 2008 order for obtaining unsupervised visitation.

The court order regarding these children provided that they were removed from the mother's custody because she had an older child that DCS was constantly involved with, to which the mother eventually surrendered her rights, and because there were allegations regarding the mother's mental health. The Court found the mother lacked financial resources to support the children, and that the father was in Jordan and only made infrequent, token

support payments. The Court considered the mother's psychological evaluation and parenting assessment, and determined that the risk of negligent care by the mother was too great to leave the twins in her custody.

The proof at trial demonstrated that the mother had done none of the things required of her even for unsupervised visitation, much less to try and regain custody.

While the mother argues that she was "ready to be reunified with her children" and had shown such to the Court by maintaining her subsidized housing for two years and enrolling in school, this did not obviate the need for her to follow the Court's prior order to show that she was trying to merely gain unsupervised visitation. The mother offered no explanation for failing to attend a parenting class, for failing to find even a part-time job, or for failing to follow the Court's order regarding mental health treatment. Moreover, the mother had done nothing whatsoever to gain unsupervised visitation, or gain custody of her children. Thus, there was clear and convincing evidence demonstrating persistent conditions pursuant to Tenn. Code Ann. §36-1-113(g)(3).

Next, the mother argues that the Trial Court erred in relying upon a chart regarding visitation prepared by Tessa S., as it contains inadmissible evidence. This issue is moot, however, as Mr. and Mrs. S. testified regarding the visitation at great length, and this chart is merely cumulative of their testimony.

Finally, the mother argues that termination was not shown to be in the children's best interests. The mother did not show that she had made such adjustments of circumstances that it would be safe for the children to be with her, and had failed to effect a lasting adjustment after two years of removal. She had not maintained regular visitation or contact, and did not have a meaningful relationship with the twins. A change of caretakers and physical environment could likely be very detrimental to these young children, who had been with petitioners since birth and were bonded with them and their children. Considering all of the foregoing factors established by the evidence, the Trial Court did not err in concluding that termination was in the children's been interest.

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to Sonya G.

_____
HERSCHEL PICKENS FRANKS, P.J.

-7-